[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This the plaintiff's motion for contempt with regard to the CT Page 5977 defendants' sale of a horse in contravention of a court order prohibiting such a sale.
On August 8, 1994, the plaintiff filed an application seeking an attachment of the defendants' horse by way of a prejudgment remedy. A hearing on the application for prejudgment remedy was scheduled for September 12, 1994. On that day, the court, Hammer, J., met with plaintiff's counsel and the pro se defendants in chambers to discuss issues surrounding the hearing. Later, on the record, Judge Hammer voiced reservations about proceeding with the hearing because of undisclosed problems (Plaintiff's Exhibit A, pp. 5 and 19). Instead, with the consent of the parties, Judge Hammer issued an order barring the defendants from removing the animal from Connecticut until January 1, 1995, or further order of the court. (Plaintiff's Exhibit A, p. 12). The court also proscribed the sale or encumbrance of the horse until further order of the court (Plaintiff's Exhibit A, p. 16). The court declined to continue the matter but allowed the plaintiff to reclaim the hearing on the application if necessary (Plaintiff's Exhibit A, p. 19).
Apparently, the request for a hearing was reclaimed, and the case came before Judge Rittenband on November 21, 1994. Judge Rittenband also heard no evidence. Instead, he entered a denial of the application for attachment of the horse, but continued J. Hammer's previous order forbidding the transfer, disposal, or encumbrancing of the beast (Plaintiff's Exhibit B, pp. 4 and 5). He specifically commented that, if the defendants wished to remove the animal to Massachusetts in March 1995, they could request another hearing to address that issue. (Plaintiff's Exhibit B, P. 5).
The parties agree that on May 9, 1995, the horse was sold. The plaintiff asserts that the sale of the horse violated the orders of the court precluding sale. The defendants contend that the orders restraining alienation of the horse expired before the sale occurred.
In a motion for civil contempt the movant has the burden of establishing, by a preponderance of the evidence, the existence of the legal duty claimed to have been breached, Potter v. Board ofSelectmen, 174 Conn. 195, 197 (1978). By its terms, the duration of Judge Hammer's order with respect to removal of the horse extended only to January 1, 1995. However, his order with respect to sale of the animal seems to lack a similar timetable. CT Page 5978
On November 11, 1994, one of the defendants expressed a desire to move the horse to Massachusetts for further training (Plaintiff's Exhibit B, p. 4). The plaintiff's attorney asked Judge Rittenband to defer ruling on this issue until a later date. Judge Rittenband acceded to this request and stated that the parties could request another hearing before March 1995, if necessary, to resolve that issue. That comment by the court was followed by this order:
 "But right now, the defendants are, by court order, restrained from transferring or otherwise disposing of the horse, taking it outside the State of Connecticut . . . ." (Plaintiff's Exhibit B, p. 5).
These references to March 1995 make it clear to the court that Judge Rittenband intended to extend Judge Hammer's order until further action by the court. Thus, by selling the horse on May 9, 1995, the defendants violated Judge Rittenband's order.
A civil contempt involves more than a violation of a court order, however. Noncompliance must be a wilful one, Marcil v.Marcil, 4 Conn. App. 403, 405 (1985). The court finds that the defendant's noncompliance resulted from an honest misinterpretation of the court's orders rather than from intentional disobedience of the same. It has taken the court several careful readings of the transcripts to sort out the effect of the court orders. Confusion by laypersons without ready access to these transcripts is understandable. Mistaken perception regarding the import and efficacy of the court's order can be the basis for finding an absence of wilful violation of the court's order, Id. The court cannot find the defendants in contempt.
This finding of unintentional breach and noncontempt does not end the matter, however. In a contempt proceeding, even in the absence of a finding of contempt, a trial court has the discretion to make whole a party who has suffered because of another party's noncompliance with a court order, Nelson v. Nelson, 13 Conn. App. 355,367 (1988). In the present case, the plaintiff relied on the court order preventing disposition of the horse while the matter was pending to forego pursuing attachment of the animal. The sale of the horse lessens the plaintiff's access to assets should the plaintiff obtain a favorable decision.
The parties have agreed that the horse was worth at least CT Page 5979 $5,000 when it was sold. The court orders the defendants to post a $5000 bond with the clerk within thirty days of the date of this decision, which bond may be used to satisfy any judgment received by the plaintiff in this case.
Sferrazza, J.