[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION REGARDING PLAINTIFF'S MOTION FOR CONTEMPTCODED NO. 151
The plaintiff has filed a motion for contempt against the defendant dated April 18, 1997, coded No. 151.
The motion for contempt makes the following allegations:
 1. On June 11, 1996, this Court entered a Decree of Dissolution of Marriage.
 2. Pursuant to the terms of said Judgment, the Defendant was ordered to pay child support, alimony, real and personal property as appears on file.
 3. On November 1, 1996, this Court conducted a hearing and made the following findings:
 A. That as of November 1, 1996 there was a support arrearage of $3,600.00;
 B. That as of November 1, 1996 there was an alimony arrearage of $2,000.00;
C. That the Defendant owes the Plaintiff CT Page 11448 $303.00 toward unreimbursed medical expenses;
 D. That the Defendant was in willful violation of an Order of the Court and was found to be in contempt of the Court;
 E. That the Plaintiff was ordered to pay $1,660.00 in Counsel fees for her Florida attorney and $385.00 in Counsel fees for her Connecticut attorney;
 F. That the Defendant was ordered to pay to the Plaintiff $1,200.00 for his failure to turn over the Tractor-Mower and $2000.00 for having removed the furniture from the Florida property;
 G. That the Defendant was ordered to execute a Promissory Note secured by a Mortgage Deed on 8844 Parliament Court property, Florida;
 H. That one-half of the value of any cash surrender value on his Life Insurance policy was ordered to be turned over to the Plaintiff.
 4. The Defendant was ordered to transfer to the Plaintiff the real property located in Florida referred to in paragraphs D-12 and D-13 of the Memorandum of Decision.
 5. Despite the repeated requests and demands of the Plaintiff, the Defendant has neglected and refused to execute a proper authorization in favor of the Plaintiff to obtain information regarding cash surrender value of his life insurance policy as required by paragraph D-8 of the Memorandum of Decision.
 6. Despite the repeated requests and demands by the Plaintiff, the Defendant has neglected and refused to continue to pay the alimony, child support and to pay the Plaintiff for his portion of the unreimbursed medical expenses as set forth under the terms of the Judgment.
7. The Defendant continues to refuse to comply CT Page 11449 with the above Orders of the Court.
Many of the facts that give rise to this motion are not in dispute. On June 11, 1996, this court filed a memorandum of decision dissolving the marriage between the parties and entered certain orders. The court ordered in part that the defendant pay to the plaintiff, as support, the sum of $180 per week. The court further ordered that the plaintiff provide health insurance for the children and that the parties divide equally any uncovered or unreimbursed health expenses for the children. The court further ordered that the plaintiff transfer to the defendant by quitclaim deed whatever right, title and interest she may have in a lot located in Palm Coast, Florida within thirty days from the date of the decision. The court further ordered that the plaintiff transfer to the defendant by quitclaim deed all of her right, title and interest in property located at 8844 Parliament Court, Kissimmee, Florida within thirty days from the date of the decision. The court further ordered that the defendant transfer to the plaintiff by quitclaim deed all of his right, title and interest in property located at 222 Ethan Avenue, Davenport, Florida within thirty days from the date of the decision. The court further ordered that the defendant transfer to the plaintiff by quitclaim deed within thirty days from the date of the decision all of his right, title and interest in the time-share located in Orange Lake, Kissimmee, Florida. The court also ordered that all of the transfers of the interest in the real estate located in Florida were to be simultaneously exchanged between the parties at the office of the plaintiff's attorney in Florida. The plaintiff was ordered to notify the defendant in writing by registered mail, return receipt or certified mail, return receipt at his address at 8844 Parliament Court, Kissimmee, Florida of the date, time and place when the documents were to be exchanged. An order was further entered awarding to the defendant a building lot located at Cod Fish Hill, Bethel, Connecticut. In the memorandum of decision, the court found that the property located at Cod Fish Hill had a fair market value of $119,900, and a mortgage of $84,606.82 and an equity of approximately $35,300. The court further found that the fair market value of the Palm Coast, Florida lot was $10,000. The court further found that the value of the property at 8844 Parliament Court, Kissimmee, Florida was $80,000 and that it did not have a mortgage on it and, therefore, had an equity of $80,000. The court found that the fair market value of the property at 222 Ethan Avenue, Davenport, Florida was $93,000, that it had a mortgage with a balance of $59,060.62 as of April CT Page 11450 1, 1996, and an of approximately $34,000. The court further found that the value of the Orange Lake, Kissimmee, Florida time-share was $10,000. The court further found that the value of the family home located at 19 Hoyt Road, Bethel, Connecticut was $290,000, that it had a mortgage balance as of May 21, 1996, of $105,152.63 and an equity of $184,847.37. The court further found that the defendant had transferred title to a dual side mobile home in Florida and had received $35,000 for that transfer, and awarded that money to the defendant.
The amount of support that was ordered was $180 per week. Also, alimony was awarded in the amount of $100 per week, to terminate on the death of the plaintiff, the death of the defendant, the remarriage of the plaintiff or the date the defendant executes and turns over to the plaintiff the deeds to the properties at 222 Ethan Avenue, Davenport, Florida together with a bill of sale for its contents, as well as the time-share in Kissimmee, Florida; the court having found that the plaintiff's need for alimony will be substantially reduced when she receives title from the defendant for all of the assets as ordered.
On November 1, 1996, following a hearing on the plaintiff's two motions for contempt coded No. 145 and No. 146, the court entered the following orders.
 The matter having come before the Court on this date, it is hereby ORDERED:
 that as of today's date, there is a support arrearage of $3,600.00, an alimony arrearage of $2,000.00 and the Defendant owes the Plaintiff $303.00 towards unreimbursed medical expenses. The Court authorizes and will sign a proper order directed to the Newtown Savings Bank to transfer to the Plaintiff whatever balance may be in that account in the Defendant's name to pay the arrearages found. The payment is first to be applied to the support arrearage and then to the extent there are any funds leftover, the unreimbursed medical expenses amount and then the alimony amount. Interest is to run on these three amounts at 10% per annum.
that the Court finds that the Defendant is CT Page 11451 in willful violation of a Court order and finds him to be in contempt of Court. The Plaintiff is awarded $1,660.00 in counsel fees for her Florida attorney Michael Resnick and $385.00 in counsel fees for her Connecticut attorney David Ball.
 that the Defendant is to pay the Plaintiff $1,200.00 for his failure to turn over the tractor-mower and $2,000.00 for having removed furniture from the Florida property that was awarded to the Plaintiff. Interest is to run on these sums at the rate of 10% per annum and are to be paid by 12-2-96.
 that title to the motor home is to be transferred directly to the Plaintiff. The Court directs Plaintiff's counsel to prepare the proper order for the Court's signature to accomplish this transfer.
 that, to the extent that the Newtown Savings Bank account does not pay the arrearages found, and after a supplemental hearing to determine what balances are due on those arrearages, the Court orders that the Defendant pay those arrearages in full when the Plaintiff transfers to the Defendant a deed for all of her right, title and interest in 8844 Parliament Court. Kissimmee. Florida. The Defendant is also ordered to execute a promissory note secured by a mortgage deed on the 8844 Parliament Court property for the amount of the arrearages.
 that, to the extent Florida law allows, the Court authorizes the Plaintiff to place a judgment lien on any of the Florida properties for any and all of the arrearages that exist. There is to be reduced from the amount of the judgment lien to be placed whatever amount the Plaintiff obtains from the Newtown Savings Bank.
 that, to the extent that there is any cash surrender value on the life insurance policy, one half of that value as of the date of the judgment is to be turned over to the Plaintiff. CT Page 11452
 that no order is to enter at this time regarding the transfer of the Florida property as the Court does not feel that it has the power to order the transfer of property in another state. [Emphasis provided.]
By letter dated November 3, 1996, addressed to this court, the defendant requested a hearing to reopen the orders entered by this court on November 1, 1996. Counsel was appointed to represent the defendant by the court and filed, on his behalf, a motion for rehearing dated April 28, 1997, coded No. 152. Following an evidentiary hearing, the court granted that motion on April 28, 1997. The plaintiff has filed a motion for contempt dated April 18, 1997, coded No. 151 and that motion is presently before the court. The court finds the following additional facts.
The plaintiff drove to Florida in July of 1996, arriving on July 16, 1996. She left Florida on July 24 or July 25, 1996. While in Florida, the plaintiff rented in the same development as the Parliament Court property. She saw the defendant in Florida on or about July 17, 1996. The plaintiff had contacted Attorney Resnick within a few days after the June 11, 1996 memorandum of decision to arrange for the Florida deeds to be prepared. The parties agreed to have the deeds signed in Connecticut. Attorney Resnick sent the four quitclaim deeds that he prepared to the Florida properties to Attorney Ball by letter dated July 8, 1996. Attorney Ball sent the four deeds to Attorney Resnick by letter dated July 19, 1996, by Federal Express. On July 11, 1996, the plaintiff signed the deeds for the Palm Coast and Parliament Court properties at her Connecticut attorney's office. The defendant was in Connecticut on July 11, 1996. The plaintiff told him on that date to make arrangements to sign the deed at her Connecticut attorney's office, but the defendant failed to do so. When the plaintiff realized that the defendant had not signed the Florida deeds at her Connecticut attorney's office, she arranged to have those deeds sent to her Florida attorney for execution in Florida. The defendant was in Florida on July 14 or July 15, 1996. He returned to Connecticut on or about July 29, 1996. The plaintiff never gave the defendant the name of her Florida attorney.
Attorney Resnick wrote to the defendant at 8844 Parliament Court, Kissimmee, Florida by certified mail on July 26, 1996, to notify him of the transfer of the quitclaim deeds to take place CT Page 11453 at the management office of the Orange Lake Country Club on August 6, 1996, at 10:00 a.m. The defendant did not receive that letter and did not arrive for the exchange of the deeds.
The memorandum of decision by this court dated June 11, 1996, ordered that all transfers of Florida real estate take place within thirty days of the date of that decision, and that the plaintiff's Florida counsel notify the defendant by registered mail, return receipt or certified mail, return receipt of the date, time and place when the documents were to be exchanged. The certified letter from Attorney Resnick to Mr. Pritchard dated July 26, 1996, did not comply with this court's order in that it was not sent within thirty days of June 11, 1996.
Attorney Resnick recorded the deed from the plaintiff to the defendant regarding the Parliament Court property on December 30, 1996, prior to the 11 a.m. sheriff's sale that was held at the courthouse. As a result of recording that deed, the sheriff's sale resulted in the Windsors acquiring a 100 percent interest in the Davenport property rather than only acquiring a 50 percent interest. Based on the fair market value found by this court at the time of the decision on June 11, 1996, the recording of the deed resulted in the defendant losing $40,000 equity in the property. Although the deed to the Parliament Court property was recorded on December 30, 1996, the deed to the Palm Coast property was not recorded.
The defendant was sued in Florida by Ronald Windsor and Rosemary Windsor as a result of a dispute involving the double wide mobile home. Attorney Resnick was the attorney for the Windsors in that lawsuit. The amount in dispute regarding that lawsuit for which the Windsors obtained a judgment against the defendant was approximately $10,000 to $11,000. The plaintiff was also aware of the fact that the Windsors were seeking to satisfy their judgment against the defendant's interest in the property located at 8844 Parliament Court Kissimmee, Florida. She obtained a notice from a sheriff on or about November 25, 1996, that there would be a sale of the property located at 8844 Parliament Court, Kissimmee, Florida to take place on December 30, 1996, at the courthouse in Kissimmee, Florida to satisfy the Windsors' judgment against the defendant. She received the notice of this sale after having previously received a copy of the order entered by this court on November 1, 1996. Attorney Resnick also received a copy of the order of this court dated November 1, 1996, prior to the December 30, 1996 sale date. The order of this court of CT Page 11454 November 1, 1996, did not require the plaintiff to transfer to the defendant title to the Parliament Court, Florida property until the defendant had brought the arrearages current. Attorney Resnick was aware of the fact that there was no mortgage on the Parliament Court property when the sale was conducted on December 30, 1996. He was present at the sale, as well as Mr. and Mrs. Windsor, Mrs. Windsor's brother and a friend of her brother. The property was purchased for the amount of the judgment together with court costs of a few hundred dollars. The plaintiff was aware of the fact, as a result of the letter sent to her by Attorney Resnick dated October 23, 1996, that she had title to the Florida properties awarded to her as a result of the Florida domestication of the decision of this court of June 11, 1996. Attorney Resnick represented the Windsors prior to the time that he represented the plaintiff. The mobile home suit filed by him on behalf of the Windsors was commenced on or about July 19, 1996. The Windsors referred the plaintiff to Attorney Resnick. The plaintiff was aware of the fact that Attorney Resnick was representing the Windsors in their suit against the defendant when he commenced to represent her. A sheriff's sale in Florida does not normally result in a sale price exceeding the amount of the judgment.
On September 1, 1996, Attorney Resnick commenced a process of domesticating the Connecticut judgment in Florida. The defendant had until on or about September 20, 1996, to contest the validity of the Connecticut judgment in Florida. The Connecticut judgment would automatically become a Florida judgment on or about September 20, 1996, if not contested by the defendant. As a result of the domestication of the Connecticut judgment in Florida, the plaintiff obtained title to the two Florida properties on October 10, 1996. The plaintiff transferred title to the property located at 222 Ethan Avenue, Davenport, Florida to Dennis and Jane Teasdale on or about March 17, 1997.
The defendant has filed suit in Florida to set aside the judgment entered against him in the suit by Ronald and Rosemary Windsor.
The defendant had a buyer for the Grassy Hill Road, Bethel, Connecticut property with a closing scheduled for late November or early December, 1996. That sale fell through as a result of the plaintiff having allowed a lien to remain on that property without any court approval as part of the judgment of June 11, 1996. The bank holding the first mortgage on that property has CT Page 11455 since foreclosed and has obtained a deficiency judgment against the defendant in the amount of $22,406.02. If the sale had been completed, the defendant would not have a deficiency judgment against him.
As of August 21, 1997, the arrearage owed by the defendant to the plaintiff consisted of the following: (a) alimony — $1700 calculated on the basis of $100 per week from June 11, 1996 to October 10, 1996, when alimony terminates as a result of the plaintiff having obtained title to the two Florida properties; (b) support — $11,160; and (c) defendant's share of unreimbursed medical — $247.95 for a total of $13,107.95.
The court further finds that the defendant wrongfully removed furniture after June 11, 1996, from the Florida home that the plaintiff was awarded, which furniture had a fair market value of $1730.74. The defendant also failed to turn over to the plaintiff the lawn mower tractor awarded to her. The court finds that its fair market value was $1200. The combined total for the furniture and tractor is $2930.74. The court is applying the money that the defendant obtained from the Newtown Savings of $2930.74 in full payment of the money owed by the defendant to the plaintiff for the furniture and tractor lawn mower. The plaintiff has clear title to the motor home and, therefore, there is no remaining issue involving the motor home.
The court finds that as a result of Attorney Resnick recording the deed from the plaintiff to the defendant within a few hours prior to the Florida court ordered sale of December 30, 1996, that the plaintiff has failed to comply with the court order that she transfer to the defendant her one-half interest in the property located at 8844 Parliament Court, Kissimmee, Florida. Attorney Resnick was acting both as the attorney for the plaintiff and the attorney for the Windsors when he recorded that deed. The result of recording that deed is no different than if the deed had run directly from the plaintiff to the Windsors. The plaintiff was not under any obligation to have the deed for her one-half interest in the 8844 Parliament Court, Kissimmee, Florida property turned over to the defendant prior to the time that a supplemental hearing was held in accordance with the order of this court entered on November 1, 1996. That supplemental hearing was not held until after December 30, 1996. Further, the plaintiff did not have to transfer her interest of the Parliament Court, Kissimmee, Florida property to the defendant until the arrearages owed to the plaintiff were paid in full. The alimony, CT Page 11456 support and property orders entered by this court on June 11, 1996, were part of a mosaic of orders. Under the circumstances of this case, in which for all practical purposes, the plaintiff has given away to the Windsors the one-half interest in the 8844 Parliament Court, Kissimmee, Florida property that she was ordered to transfer to the defendant, the court, in the exercise of its discretion, finds that contempt should not be entered in this case. A finding of contempt depends on all the facts and circumstances surrounding the case. The fact that the alimony and support orders, as well as the payment of unreimbursed medical expenses have not been complied with by the defendant, does not dictate that a finding of contempt must enter. It is within the discretion of the court to deny a claim for contempt where there is an adequate factual basis to explain the failure to honor the court's orders. Marcil v. Marcil, 4 Conn. App. 403,409 A.2d 620 (1985); Bunche v. Bunche, 36 Conn. App. 322 (1994). The court, therefore, enters the following orders:
ORDERS
1. The arrearage of $13,107.95 is to include interest at the rate of 10 percent per annum from today's date.
2. The arrearage is to be paid at the rate of $35 per week. Payments are first to be applied to interest and then applied to principal.
3. No attorney's fees are awarded in favor of either party.
4. Alimony is terminated as of October 10, 1996.
5. The payment on the arrearage is to increase to $125 per week on July 15, 2000, when the oldest child turns eighteen. The payment on the arrearage is to increase to $225 per week on March 30, 2005, when the youngest child turns eighteen.
6. The plaintiff's motion for contempt is denied.
Axelrod, J.